# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>    Respondent, | : | CRIMINAL NO. 02-644-1 |
| | : | |
| | : | CIVIL NO. 09-4555 |
| v. | : | |
| | : | |
| EDWARD BELLINGER, a/k/a | : | |
| MATTHEW BELLINGER, a/k/a | : | |
| CARLOS KEY, | : | |
|     Petitioner | : | |

## MEMORANDUM RE: MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

**Baylson, J.**                                                                                                      **August 24, 2010**

Petitioner Edward Bellinger is currently serving a 102-month term of imprisonment after being convicted of possession of a firearm by a convicted felon. After the Third Circuit affirmed his conviction, Bellinger filed the pending Habeas Corpus Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct his Sentence, which asserts several ineffective assistance of counsel claims. For the reasons detailed below, Bellinger's motion will be denied.

**I.**     **Procedural and Factual History**

On July 20, 2004, a federal grand jury indicted Bellinger on one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Prior to trial, Bellinger filed a motion to suppress physical evidence (Doc. No. 19), and the district court held a hearing on the motion on August 23, 2004. The district court subsequently denied Bellinger's motion (Doc. No. 42) on November 3, 2004.

On March 10, 2005, following a two-day trial during in which Bellinger was represented by Elliot M. Cohen, Esq., a jury found Bellinger guilty of one count of possession of a firearm by

a convicted felon (Doc. No. 52). At the December 20, 2005 sentencing hearing, Bellinger requested new counsel, and subsequently, Ellen C. Brotman, Esq., was appointed as Bellinger's counsel going forward (Doc. Nos. 67, 68). Following the appointment of new counsel, Bellinger filed a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, or, in the alternative, for new trial under Federal Rule of Criminal Procedure 33 (Doc. No. 80). Judge Brody held hearings on Bellinger's motion on August 14, 2006, and on October 23, 2006. After finding excusable neglect pursuant to Federal Rule of Criminal Procedure 45(b)(1)(B), Judge Brody granted Bellinger's motion for an extension of time to raise post-trial motions (Doc. No. 93). On November 8, 2006, the district court denied Bellinger's motion for acquittal or new trial (Doc. No. 95).

On November 28, 2006, Bellinger was sentenced to 102 months of imprisonment, a five-year term of supervised release, a $1,500 fine, and a $100 special assessment (Doc. Nos. 99, 100). Bellinger timely filed a notice of appeal on December 11, 2006 (Doc. No. 102), and on July 9, 2008, the Third Circuit Court of Appeals affirmed the judgment and district court's sentencing order (United States v. Bellinger, 284 Fed. Appx. 966 (3d Cir. 2008) (non-precedential)).

On October 1, 2009, Bellinger filed his § 2255 motion (Doc. No. 108), to which the government responded on February 16, 2010 (Doc. No. 114). Bellinger filed his reply on March 30, 2010 (Doc. No. 118).

## II. Legal Standards

### A. 28 U.S.C. § 2255

Bellinger brings his motion under 28 U.S.C. § 2255(a), which provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A district court may grant relief under this statute if the court finds that "judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b).

### B. Ineffective Assistance of Counsel

Bellinger argues that counsel was ineffective for several reasons, each of which will be detailed below. Claims for ineffective assistance of counsel are controlled by Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'" in order to prevail on an ineffectiveness claim. Id. at 689. In order to do so, a petitioner must show (1) deficient performance by counsel, and (2) that the petitioner suffered prejudice as a result of that performance. Id. at 687; see also Berghuis v. Thompkins, --- S.Ct. ---, 2010 WL 2160784 (2010) (reciting Strickland standard).

First, to establish deficient performance, Strickland requires that a petitioner demonstrate that "counsel's conduct was so unreasonable that no competent lawyer would have followed it,

and that counsel has 'made errors so serious that counsel was not functioning as the "counsel" guaranteed . . . by the Sixth Amendment.'" United States v. Jackson, 2010 WL 1688543, at *2 (E.D. Pa. Apr. 27, 2010) (quoting Strickland, 466 U.S. at 687). Second, to establish prejudice, "the petitioner must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "In assessing prejudice, courts 'must consider the totality of the evidence before the judge or jury.'" Id. at 695. "A court need not determine whether counsel's performance was deficient before examining the prejudice suffered . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed." Id. at 697.

### III.     Parties' Contentions

Bellinger claims that he received ineffective assistance of counsel and that, as a result, his Sixth Amendment rights were violated. Bellinger cites three ways in which counsel failed to effectively assist: (1) Counsel met with and consulted Bellinger only once before trial, and as a result of the insufficient number of meetings, counsel failed to interview Ms. Pearson, the driver of the car in which the weapon was found, until the day Ms. Pearson appeared at trial on May 9, 2005; (2) counsel met with and consulted Bellinger only once before trial, and as a result failed to impeach a key witness, Officer Green, regarding inconsistencies in statements the officer made about the basis for the traffic stop; and (3) counsel failed to raise a motion in limine regarding the admission of Bellinger's prior robbery conviction, or to oppose the government's motion to admit this evidence, and as a result, Bellinger's right to testify on his own behalf and to a fair trial were compromised.

In response, the government first argued that the testimony Bellinger alleges would have been proffered as a result of him having had an opportunity to advise his counsel more extensively on his interactions with the driver of the car was clearly brought out at trial. Therefore, no additional testimony would have arisen, and Bellinger was not prejudiced. Second, the government argued that counsel was aware of the alternative basis for the traffic stop because counsel thoroughly cross-examined Officer Green on this issue at the motion to suppress hearing, and thus, the decision not to impeach Officer Green with the flash reports was a sound trial strategy because the flash reports would have actually bolstered Officer Green's stated reason at trial for stopping the car. Third, the government argued that Bellinger's previous robbery conviction was admissible under Federal Rule of Evidence 609(a)(1), and as such, Bellinger cannot establish that his counsel was objectively unreasonable in conceding the use of the robbery conviction at trial or that his failure to oppose it resulted in prejudicial error.

## IV. Analysis

For each of Bellinger's claims, he must prove both that he was deficiently represented by his counsel, and that he was prejudiced as a result of the deficient performance. Strickland, 466 U.S. at 687.

### A. Failure to Meet with Bellinger

Bellinger first claims that Cohen was ineffective by failing to meet with Bellinger more than once prior to trial. Cohen met with Bellinger only once between September 2003, when Bellinger was initially detained, and August 23, 2004, the initial trial date, and did not meet with him again during the trial's six month continuance. Petitioner contends that this falls well below the professional norm, especially given the one and a half year time frame during which Cohen

had the opportunity to consult Bellinger, and that because Cohen met with him only once prior to trial, Cohen was not able to pursue important lines of inquiry that may have led to exculpatory evidence or testimony. Bellinger claims that as a result of this failure, Cohen (1) did not undertake steps to interview Delonda Pearson, the driver of the vehicle, and (2) was not in possession of information that would have prompted Cohen to investigate the police officers' reason for stopping the car.

After review, the Court finds that the fact that Cohen met with Bellinger only once prior to trial is not per se prejudicial. As the Supreme Court has made clear, an attorney must only comply with professional norms. Strickland, 466 U.S. at 687. Defense counsel met with Petitioner the morning of trial, and as the government pointed out in its brief, learned about the substance of Pearson's testimony and what information would prove fruitful for the defense. Pearson did testify at trial that she did not see Petitioner with the gun. (Trial Tr. 89, 91, 96-97). Even if counsel was deficient in failing to interview Pearson prior to trial, this itself is not enough to merit granting relief under Strickland, as Petitioner has failed to demonstrate how any failure to interview Pearson or call her as a witness in any way prejudiced his case. It is worth noting that while Petitioner claims that Pearson did not testify about her activities and time spent with the Petitioner during the full day in question, as opposed to the time period directly before the car ride in question, counsel cross-examined Pearson as he thought necessary, and his decisions as to how he chose to conduct his cross examination were well within the professional norms.

Additionally, the fact that defense counsel only met with Petitioner a few times prior to trial complied with professional norms. These norms require no more than a minimal level of contact between an attorney and client—norms that were met in the present case. See, e.g.,

United States v. Junne, 458 F.2d 1156, 1157-58 (3d Cir. 1972) (denying ineffective assistance claim where attorney was appointed two days before trial and had limited contact with client); Villot v. Varner, 465 F. Supp. 2d 439, 446-47 (E.D. Pa. 2006) (holding counsel was not ineffective where counsel only met with client a few times); Navarro v. Johnson, 365 F. Supp. 676, 688 (E.D. Pa. 1973) (rejecting ineffective assistance claim where attorney did not meet client until morning of trial and spoke to him for only five minutes). Here, a review of the trial transcript indicates that counsel had adequately prepared to conduct the defense, and was not unprepared at trial. Thus, there was no prejudice to Petitioner based on the number of meetings with counsel.

### B. Failure to Impeach a Key Witness

Bellinger next claims that Cohen was ineffective by failing to impeach Officer Green regarding the basis for stopping the vehicle in which Bellinger was a passenger. Officer Green, at a co-defendant's preliminary hearing, stated that the vehicle stop was initiated because the Oldsmobile matched a car mentioned in flash reports. At the motion to suppress hearing in this case, Office Green testified that the traffic stop was initiated for two reasons—first, because the car fit the description of a vehicle in flash reports produced in the months prior to the incident, and second, because of the illegal tint of the car's windows. Bellinger claims that because Officer Green's reliability as a key witness was determinative of Bellinger's innocence or guilt, Bellinger was prejudiced because this inconsistency was not raised at trial, and thus, Officer Green's credibility was not called into question.

Bellinger's argument fails because the weight of the evidence demonstrates that Bellinger was not prejudiced as a result of this inconsistency. Officer Green testified at the suppression

hearing that flash reports indicated that the car involved in several robberies had dark tinted windows. Therefore, the flash reports themselves are consistent with Officer Green's alternate stated reason for stopping the car—improperly tinted windows. In addition, Bellinger's main concern—that the jury be exposed to inconsistencies in Officer Green's testimony—was sufficiently addressed by defense counsel at trial. Indeed, Officer Green was cross-examined on various inconsistencies regarding his testimony as compared with paperwork he filed, paperwork filed by others, his previous testimony, and the testimony of other officers. (Trial Tr. 40-68.) Specifically, defense counsel questioned Officer Green about inconsistencies regarding: (1) Officer Green's failure to note in his paperwork that the car occupants took fifteen seconds to roll down the car windows (Trial Tr. 40-41); (2) his failure to inform the assigned detective regarding the fifteen-second delay (Trial Tr. 41-42); (3) his failure to inform the Assistant United States Attorney and Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives assigned to the case about the fifteen-second delay until the suppression hearing (Trial Tr. 42-43); (4) his testimony at a co-defendant's state trial that Pearson was able to produce some ownership of the car, while he testified at Bellinger's trial that she did not provide such documentation (Trial Tr. 46-50); (5) his detailed testimony about the location of the gun attributed to Bellinger, which contradicted the arrest memo Officer Green prepared the same date as Bellinger's arrest which does not describe how he could see the gun and what portion of the gun was visible (Trial Tr. 57-62); (6) his failure to inform the assigned detective about his detailed recall about the location of the gun attributed to Bellinger, which was not captured in the assigned detective's paperwork (Trial Tr. 66-68); (7) his detailed testimony about the location of the gun attributed to Bellinger, which contradicted his testimony at Bellinger's state preliminary

hearing where he only described the gun being stuck in the front seat and never informed the court what portion of the gun was visible (Trial Tr. 62-63); (8) his testimony that Pearson stopped the Oldsmobile partially in the street and next to a parked car, which contradicted Pearson's later trial testimony that the Oldsmobile was not in the street and not stopped next to a parked car (Trial Tr. 63-64); and (9) his testimony that he had Bellinger lie down on the street between the Oldsmobile and a parked car, which contradicted Pearson's later trial testimony that the officers made Bellinger lie down on the pavement (Trial Tr. 64-66).

Decisions regarding cross examination, including the extent and manner, are generally considered strategic in nature and will not support an ineffective assistance of counsel claim. See United States v. Frankenberry, 696 F.2d 239, 242 (3d Cir. 1982) ("Trial counsel is entitled to a measure of latitude and discretion in the manner in which the trial is conducted."); Nguyen v. Grace, 245 Fed. Appx. 130, 131 (3d Cir. 2007) (non-precedential) ("[I]neffectiveness of trial counsel is not determined by hindsight. When the lawyer is confronted with the choice between an aggressive cross-examination . . . and a succinct one . . . the courts should defer to counsel's decision."). The Court finds that Cohen's failure to impeach Officer Green with his prior testimony regarding the reason for the traffic stop was a strategic decision that falls within the province of counsel. Furthermore, Bellinger has not established a prejudicial effect that arose as a result of Cohen's failure to point to this additional inconsistency in Officer Green's testimony. Because this Court must review Cohen's performance in a "highly deferential" manner, and is required to find a "strong presumption" that Cohen acted within professional norms, Strickland, 466 U.S. at 689, Petitioner's claim as to this issue fails under Strickland's first prong.

Even if this Court were to find that defense counsel was ineffective for failing to highlight this inconsistency in Officer Green's testimony, this finding would not be enough to meet the second prong under Strickland. Again, under Strickland's second prong, a petitioner must establish a reasonable probability—one sufficient to undermine the court's confidence in the outcome—that the jury's verdict would have been different if not for counsel's errors. When evidence is presented, courts "must assess this evidence in relation to the record as a whole, to determine whether there is a reasonable probability that such evidence, if presented to a jury acting 'conscientiously . . . and impartially,' would have led the jury to have a 'reasonable doubt' respecting [the petitioner's] guilt." United States v. Gray, 878 F.2d 702, 713 (3d Cir. 1989) (citation omitted) (quoting Strickland, 466 U.S. at 695). Even had Cohen impeached Officer Green regarding his statements related to the flash robbery reports, the jury was still free to conclude that Officer Green was telling the truth about how the traffic stop transpired. It cannot be said that a reasonable probability exists that this additional impeaching evidence would have led the jury to doubt the petitioner's guilt.

### C. Failure to Raise Motion in Limine

Finally, Bellinger claims that his counsel provided ineffective assistance when he failed to raise a motion in limine to preclude the admission of Bellinger's 1989 robbery conviction or a motion to oppose the Government's motion in limine to admit this conviction. Bellinger claims he was prejudiced because he was unable to make an informed decision about whether to testify on his own behalf, and that his testimony would have persuaded the jury of his lack of knowledge about the gun. As such, Bellinger claims that he was prejudiced as a result of his inability to testify. The Court finds that Bellinger's claim fails, as his 1989 robbery conviction was

admissible under Rule 609(a)(1) of the Federal Rules of Evidence, and therefore, it was not unreasonable for Cohen to decline to bring a motion in opposition to the admission of the conviction.

Rule 609(a)(1) provides that "evidence that an accused has been convicted [of a felony] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect." This balancing applies when the accused was released from prison within the 10 years prior to the new crime. If the release occurred more than 10 years prior to the crime at issue, a felony conviction is only admissible if the Court finds that "the probative value . . . substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b). The Third Circuit has instructed district courts to consider several factors when determining whether the probative value of a prior conviction outweighs its probative effect. These factors include: "(1) [T]he kind of crime involved, (2) when the conviction occurred, (3) the importance of the witness' testimony to the case, and (4) the importance of the credibility of the defendant." United States v. Greenidge, 495 F.3d 85, 98 (3d Cir. 2007).

In the present case, an analysis of these factors supports the admission of the 1989 robbery conviction. Without getting into a lengthy retrospective analysis of the propriety of admitting the records at issue here—a decision made by the trial court at trial—the Court simply states that it believes that the factors weigh in favor of the admission of the evidence of the previous conviction. For instance, under the fourth factor—the most relevant factor in the present robbery context—a robbery conviction is the kind of conviction that courts find to be probative of a defendant's veracity. See United States v. Patterson, 2009 WL 3423839, at *3 (E.D. Pa. Oct. 21, 2009) ("While robbery does not carry the probative significance of a crimen

falsi, it is nonetheless a crime that reflects on an individual's veracity" (citation omitted)). Indeed, as pointed out by Judge Surrick in Patterson, "[a]lthough the Third Circuit has not directly ruled on the issue, several other courts of appeals have determined that a robbery conviction is probative of a defendant's veracity." Id. (citing United States v. Moore, 917 F.2d 215, 235 (6th Cir. 1990) (affirming district court's decision to admit nine-year-old conviction for robbery as impeachment evidence under Rule 609(a)(1) in a case where the defendant was charged with armed robbery because the defendant's prior robbery conviction "went to credibility, and had impeachment value"); United States v. Givens, 767 F.2d 574, 580 (9th Cir. 1985) ("[P]rior convictions for robbery are probative of veracity."); United States v. Washington, 746 F.2d 104, 107 (2d Cir. 1984) (affirming trial court's decision to admit evidence of defendant's prior robbery conviction under Rule 609); United States v. Grandmont, 680 F.2d 867, 872 (1st Cir. 1982) (holding that the district court had an "ample basis to conclude" that the defendant's prior robbery conviction should be admitted under Rule 609(a)(1))). Thus, the fourth prong weighs strongly in favor of admission, which mitigates against the first factor, which weighs slightly against admission, due to the fact that robbery and gun possession are not identical crimes with identical elements. It is true that the under the second prong, the crime occurred more than ten years before the March 2005 trial on felony possession, and that under the fourth prong, Bellinger's testimony would have been of central importance to the case. Nevertheless, reviewing the four factors leads the Court to conclude that Defendant's prior robbery conviction was properly admitted under Rule 609(a)(1), and that defense counsel's strategic decision not to challenge the government's motion in limine was not unreasonable or in error. Furthermore, Bellinger cannot establish that a motion to oppose the admission of this

conviction would have resulted in a different verdict by the jury, and thus, prejudice did not accrue as a result. For these reasons, Bellinger cannot satisfy Strickland's requirements on this claim.

## V. Conclusion

For the reasons stated above, none of Bellinger's ineffective assistance of counsel claims meets the Strickland standard. Accordingly, this Court will deny his pending § 2255 motion without a hearing. Also, the Court does not find any "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which warrants a certificate of appeal in this case.

An appropriate Order follows.

O:\Criminal Cases\02-644 US v. Bellinger\02-644-1 Bellinger Habeas Memo.wpd